IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON, WV

**REGENIA KIDD,**

    **Plaintiff,**

**v.**                                 **Civil Action No.** 3:14-cv-12206 _____

**GERALD McKINNEY, M.D. and the
MARSHALL UNIVERSITY BOARD of
GOVERNORS.**

    **Defendants.**

## COMPLAINT

### Preface to Complaint

Pursuant the provisions of the *West Virginia Medical Professional Liability Act*, West Virginia Code § 55-7B-1 *et seq*., the Plaintiff has served, by certified mail, a Notice of Claim against the Defendant's named in this Complaint. Accompanying that Notice of Claim was a Screening Certificate of Merit as required under the *West Virginia Professional Medical Liability Act*. The Defendant's requested pre-suit mediation. Negotiations took place and were unsuccessful in resolving this matter.

### Complaint

1.     At all times relevant to the matter as alleged in this complaint, the Plaintiff, Regenia Kidd, was a resident of Proctorville, Ohio.

2.     At all times relevant to the matter as alleged in this Complaint, Plaintiff, Regenia Kidd had a physician/patient relationship with Dr. Gerald McKinney.

3.      Based upon information and belief, Gerald McKinney, MD is a resident of the State of Louisiana.

4.      The Marshall University Board of Governors is a West Virginia entity.

5.      The United States District Court for the Southern District of West Virginia has jurisdiction of this case based upon diversity of citizenship.

6.      Based upon information and belief, the Defendant, Gerald McKinney, was an employee of the Marshall University Medical School at the time he was involved in the care and treatment of Regenia Kidd.

7.      The Marshall University Board of Governors is liable for the negligence committed by Gerald McKinney, M.D.

## FACTS

8.  On August 18, 2011, Dr. Gerald McKinney performed a single access laparoscopic cholecystectomy on Regenia Kidd.  According the operative report signed by Dr. McKinney, the gallbladder was easily visualized and completely dissected out of the liver bed.  It further states that once it was completely dissected free, the gallbladder was removed through the umbilical incision.

9.      On August 26, 2011, Regenia Kidd returned to Dr. McKinney's office for a post-operative visit.  At this time, Dr. McKinney discussed the operative findings as well as the pathology report with Ms. Kidd.  He told her he had removed her entire gallbladder during the surgery.

10.     On September 14, 2011, Regenia Kidd contacted Dr. McKinney's office with complaints of gassy abdominal pain.  She was concerned about possible complications from the surgery such as a blocked bile duct.

2

11.     Regenia Kidd saw Dr. McKinney at his office on September 16, 2011.  Her blood work at that was markedly abnormal.

12.     The following day, September 17, 2011, Ms. Kidd presented to the emergency room at Cabell Huntington Hospital with complaints of persistent, sharp, right upper abdominal pain.  A diagnosis of Gallstone Pancreatitis with likely Choledocholithiasis (common bile duct stones) was made and she was admitted to the hospital.  She has admitted to the surgical service and subsequently seen by Dr. McKinney in the hospital.

13.     Despite having a Pancreatitis diagnosis, as well as abnormal lab results, neither an MRCP nor an ERCP were ordered by Dr. McKinney.  Three days later Ms. Kidd was discharged home.

14.     On September 28, 2011, following a CT scan that revealed Acute Pancreatitis, Ms. Kidd was admitted to St. Mary's Hospital.  An MRCP was done on September 29th which revealed evidence of a retained gallbladder with stones in it.  She was discharged home on October 4, 2011.

15.     On October 10, 2011, Ms. Kidd was evaluated at the Cleveland Clinic.  Because of the portion of the gallbladder that remained in Ms. Kidd's body, a second surgery was performed on November 2, 2011 to remove the remnant.

16.     Dr. McKinney violated the applicable standard of care by failing to remove all of Ms. Kidd's gallbladder during the surgical procedure on August 18, 2011.  By failing to appropriately visualize and identify appropriate anatomy, Dr. McKinney violated the applicable standard of care.  He further violated the applicable standard of care by not removing all of the gallbladder because if he was not able to do so, he had other options available including a multi-

port laparoscopic cholecystectomy as well as conversion to an open procedure or a cholangiography.

17.     Dr. McKinney violated the applicable standard of care by failing to inform Ms. Kidd that he had left behind a substantial portion of her gallbladder.  Failing to inform her that a portion of her gallbladder had been left behind and that a second operation would be necessary to remove it, resulted in delaying her diagnosis resulting in additional pain, anxiety, expense, and additional medical procedure.

18.     Dr. McKinney violated the applicable standard of care because he failed to dictate in his operative report an accurate reflection of what happened in the surgery.  Specifically, Dr. McKinney dictated that he visualized the gallbladder and completely dissected it and removed it from Ms. Kidd's body.  In reality, a large portion of the gallbladder was left behind.  This is not reflected in the operative note.

19.     Dr. McKinney violated the applicable standard of care by failing to appropriately diagnosis and treat her post-operatively when she developed Pancreatitis as a result of him leaving a large portion of her gallbladder behind.  He did not perform appropriate post-operative testing in light of the complications she was having.  Specifically, Dr. McKinney did not perform an MRCP or an ERCP during Ms. Kidd's admission on September 17, 2011.  This caused an additional delay in establishing the correct diagnosis and, therefore, further delayed the provision of appropriate care and treatment to Ms. Kidd.

20.     The manner in which Dr. McKinney violated the applicable standard of care in his treatment of Regenia Kidd is described in more detail in the report from Dr. Robert W. Bailey, M.D.  This report was provided under the *West Virginia Medical Professional Liability Act* to the Defendants.

4

21.     As a direct and proximate of the result of the negligence of Dr. McKinney, Regenia Kidd was required to undergo a second operation as well as suffer through Pancreatitis and multiple hospitalizations and additional testing in order to discover the fact that Dr. McKinney had left part of her gallbladder in her body.  As a direct and proximate result of the negligence of the Defendant, Dr. McKinney, Ms. Kidd has experienced additional medical expenses for medical treatment and hospitalizations as well as medical expenses as the result of a second surgery to remove the portion of the gallbladder that Dr. McKinney left behind.  Dr. McKinney failed to act in the same manner that a reasonably prudent physician would have acted in the same or similar circumstances, all proximately causing or contributing to cause the injuries suffered by Regenia Kidd.  As a direct and proximate result of the negligence of the Defendants in this case, Regenia Kidd has incurred additional and unnecessary medical expenses, had extreme pain and suffering, as well as past pain and suffering.  As a direct and proximate result of the negligence of Dr. McKinney, Regenia Kidd is entitled to recover all damages permitted under West Virginia law.

22.     The actions of Dr. McKinney as described in this Complaint and in the report by Dr. Bailey where intentional, willful, wanton and reckless.

23.     As a proximate result of the aforementioned negligent, willful, wanton, reckless and intentional conduct of Dr. McKinney, Regenia Kidd:

a.      Has in the past suffered great pain and suffering of mind and body,

b.      Underwent a second surgery,

c.      Incurred substantial past medical bills.

WHEREFORE, the Plaintiff, demands judgment against Dr. McKinney and the Marshall University Board of Governors as a result of the allegations set forth in the Complaint.  Plaintiff

seeks recovery of all compensatory damages, prejudgment interests, attorneys' fees, costs, expenses, as well as punitive damages due to Dr. McKinney's willful, wanton, reckless and intentional behavior in the treatment of Regenia Kidd, and all other damages allowed by West Virginia law.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

<div style="margin-left:auto;">

**Regenia Kidd,**
By Counsel.

</div>

_____
Arden J. Curry, II (W.Va. Bar No. 907)
Pauley Curry, PLLC
P.O. Box 2786
Charleston, WV 25330-2786
(304) 342-6000 Phone
(304) 342-6007 Fax